**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | CRIM. NO. 3:14CR230 (JBA) |
| V. | : | |
| | : | |
| | : | |
| | : | |
| STEPHEN DECRESCENZO | : | FEBRUARY 6, 2015 |

**DEFENDANT STEPHEN DECRESCENZO'S**
**MEMORANDUM IN AID OF SENTENCING**

The defendant, STEPHEN DECRESCENZO, submits this memorandum in aid of sentencing to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary," to fulfill the sentencing requirements of 18 U.S.C. §3553(a). Sentencing is scheduled for February 17, 2015 at 3:00 p.m.

**Introduction**

By all accounts, at the time of the offense, Mr. DeCrescenzo was a loving husband and hands-on father, a hard-working employee, and a committed public servant. He was the third of five children born to a tight-knit Italian family from West Haven. He grew up in a secure family environment and was the first and only member of his family to go to college, graduating from Albertus Magnus College in 2000. He was president of his senior class. After years of working in the mortgage industry, including running his own business, he began working in the banking industry in 2009. During that same period of time, he became active in West Haven politics, and he was elected to the West Haven City Council, serving two terms as chairman. He was the father of two young children, and he had a wife who loved and supported him.

In 2012, all of that changed.  Today, he has lost nearly everything—his career, his marriage, his public office, and his reputation in the community.  The root cause of Mr. DeCrescenzo's sudden deviation from an otherwise law abiding life was his destructive gambling habit.  His gambling—primarily sports betting—had been a problem for him off and on since he was teenager.  In 2006, when it became more serious, Mr. DeCrescenzo promised his wife that he would stop and seek help.  He began attending Gamblers Anonymous meetings several times per week (PSR ¶44), but he did not seek individual counseling.  From December 6, 2006 until the fall of 2012, he did not gamble.

Then, in late 2012, a co-worker at Chase Bank told Mr. DeCrescenzo that he had connections that would enable Mr. DeCrescenzo to place sports bets.  Although he initially declined the offers, the temptations proved too great, and Mr. DeCrescenzo eventually started betting again.  When he could not cover his losses, he began using his position as a personal banker to access the accounts of wealthy customers with large balances, from which he transferred funds to pay back gambling debts. His intent was to replace the money when he could, as demonstrated by the fact that he returned approximately $40,000 to a customer account in February 2013, long before anyone noticed the scheme.  The money he used to reimburse the customer came primarily from a personal injury settlement check he received that same month.  Soon, however, he began losing more than he could cover, and in a two-month period (June to July 2013) he lost approximately $94,000.  On July 20, 2013, one of the bank's customers noticed the unexplained transfers and an internal investigation was launched.  As a result of the investigation, Mr. DeCrescenzo was fired

2

On November 1, 2013, Mr. DeCrescenzo was arrested and charged with larceny by the New Canaan Police Department, a prosecution that was eventually taken over by federal law enforcement.  Faced with this life altering situation, Mr. DeCrescenzo has done everything in his power to address his gambling problem and mitigate the effects of his criminal conduct.  In September 2013, before his state arrest, he entered individual therapy at Positive Directions in Westport, Connecticut.  As confirmed by the PSR (PSR ¶45), and the letter from his counselor, Mr. Vietro, Mr. DeCrescenzo has been diligent in attending the sessions.  Moreover, the damage caused by his relapse has motivated him to maintain a lifestyle free from gambling.  *See* Ltr. from B.Vietro.[1]

Mr. DeCrescenzo also fully cooperated with federal investigators, detailing his conduct and reviewing records to arrive at an accurate restitution figure for the victim. With the assistance of counsel, he negotiated a prompt, pre-indictment resolution of the case, agreeing to plead guilty to the wire fraud charge without the need for burdensome discovery or extensive court proceedings. He also resigned voluntarily from the West Haven City Council in order to avoid the unnecessary distractions and publicity that would accompany his being charged with a felony while still in office.

He now comes before this Court for sentencing, having accepted responsibility for his actions.  While on pretrial release these past fifteen months, Mr. DeCrescenzo has attempted to demonstrate—to his family and to this Court—that he has learned a valuable lesson from this painful experience.  First and foremost, he has shown that he can control his addiction.  As a result, he is no longer a danger to himself or others, and he is not likely to offend again.  His total compliance while on release also demonstrates

---

[1] All letters referred to in this memorandum have been provided to the U.S. Probation Office for transmittal to the Government and the Court.

that he is strong candidate for a non-incarceration sentence, one that will allow him to continue his rehabilitation, continue working, and continue supporting his children and paying the agreed-upon $106,028.74 in restitution that he owes to his former employer.

By this memorandum, we respectfully request that Mr.  DeCrescenzo be spared incarceration.  In view of his first-time offender status, his post-arrest rehabilitation, the substantial financial penalty imposed, the fact that his conduct was driven not by greed but by a gambling addiction, the public shame and collateral consequences to his personal life that have followed the prosecution, and his prior track record of law abiding conduct and public service, we submit that a sentence of incarceration would be greater than necessary to achieve the goals of sentencing in his case.  *See* 18 U.S.C. §3553(a).

We urge instead that the Court consider a probationary sentence, with stringent conditions, including continued treatment for his gambling addiction and substantial community service.  This is the lowest possible sentence that accomplishes all of the goals of sentencing in this case.  Moreover, a probationary sentence constitutes a substantial restriction on a defendant's liberty, a fact recognized by none other than the U.S. Supreme Court in *Gall v. United States*:

> Offenders on probation are . . . subject to several conditions that substantially restrict their liberty . . . Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled. . . .Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.  Most probationers are also subject to individual "special conditions" imposed by the court.

552 U.S. 38, 44-45 (2008) (affirming district court's decision to impose probationary sentence where Guidelines range was 30-37 months and Government argued in favor of Guidelines sentence); see also *United States v. Desmond*, No. 05 CR 729-4, 2008 WL 686779, *3 (N.D. Ill. Mar. 11, 2008)(finding that a sentence of probation is "sufficient, but not greater than necessary" for mail and wire fraud defendant facing 60 months under the U.S. Sentencing Guidelines, and noting that "[a] term of probation, including a significant term of home confinement, will be a significant restriction on [the defendant's] freedom").

To the extent the Court believes that the seriousness of the offense requires some additional restriction upon Mr. DeCrescenzo's liberty, we would urge the Court to consider a period of home confinement in lieu of imprisonment.

<u>Argument</u>

I.    **SENTENCING STANDARDS AND THE GUIDELINES**

In *Rita v. United States*, the Supreme Court discussed the role of the Guidelines and the duties of a sentencing judge as follows:

> The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. 18 U.S.C. §3552(a); Fed. R. Crim. P. 32.  [S]he may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. §5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless.

551 U.S. 338, 351 (2007).

In *United States v. Jones*, 531 F.3d 163, 171 (2d Cir. 2008), the Court of Appeals thoroughly discussed the Supreme Court's sentencing decisions in *Booker*, *Rita*, *Gall*, and *Kimbrough*:

> In short, while a sentencing court is statutorily obligated to give fair consideration to the Guidelines before imposing sentence, 18 U.S.C. §3553(a)(4); *United States v. Williams*, 524 F.3d at 215 (holding district court committed procedural error by using "sentence for which case could have been plea-bargained in Westchester County," rather than Guidelines range as "initial benchmark"), in the end, it must make an "individualized assessment" of the sentence warranted by §3553(a) "based on the facts presented," *Gall*, 129 S.Ct. at 597.

The Court of Appeals continued:

> ***Sentencing is not, after all, a precise science.*** Rarely, if ever, do the pertinent facts dictate one and only one appropriate sentence. Rather, the facts may frequently point in different directions so that even experienced district judges may reasonably differ, not only in their findings of fact, but in the relative weight they accord competing circumstances. Such reasonable differences necessarily mean that, ***in the great majority of cases, a range of sentences – frequently extending well beyond the narrow ranges prescribed by the Guidelines – must be considered reasonable.***

*Id.* (internal citations omitted and emphasis added).

Thus, while a sentencing court must give "respectful consideration to the Guidelines," the court also has discretion to determine that, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *United States v. Regalado*, 518 F.3d 143, 146 (2d Cir. 2008) (quoting *United States v. Kimbrough*, 128 S.Ct. 558, 564 (2007)). In fact, in fashioning an appropriate sentence, "the judge is not prohibited from including in that consideration the judge's own sense of what is fair and just under the circumstances." *United States v. Jones*, 460 F.3d 191, 194-96 (2d Cir. 2006).

Here, the parties are in agreement with the calculation of the U.S. Sentencing Guidelines by the U.S. Probation Office.  As a result of those calculations, and after reducing his offense level by three points for acceptance of responsibility, Mr. DeCrescenzo's advisory guideline range is 15-21 months.  Although this range calls for a period of imprisonment, the PSR notes that "the Court may consider whether the minimum guideline sentence [15 months] is greater than necessary to comply with the statutory purposes of sentencing, thereby warranting a downward variance from the Guidelines pursuant to 18 U.S.C.§3553(a)."  PSR ¶82.  For the reasons discussed below, we agree with the U.S. Probation Office.

## II.   CONSIDERATION OF OTHER RELEVANT STATUTORY FACTORS PURSUANT TO 18 U.S.C. §3553(a)

A sentence that is "sufficient, but not greater than necessary" under 18 U.S.C. §3553(a) is the lowest possible sentence that accounts for all of the relevant statutory factors.  Those statutory factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the kinds of sentences available; (4) the Guidelines range; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution.  *See* 18 U.S.C. §3553(a).

## A.   Mr. DeCrescenzo's Personal History and Characteristics

As noted above, Mr. DeCrescenzo's criminal conduct, which was driven by an addiction to gambling, is an uncharacteristic departure from a law-abiding life devoted to family and public service.  He is 38 years old and a lifelong resident of West Haven.  He is extremely close to his family, and he now lives and looks after his mother, who is

7

retired.  *See* PSR ¶32.  Over the last two years, he helped care for his father, who was in poor health and on dialysis for more than four years.  His father was taken off life support and passed away from heart and liver failure on December 1, 2014, just after Thanksgiving.  *See* PSR ¶32.  The loss of his father has hit Mr. DeCrescenzo particularly hard and he has struggled with the fact that his father passed away knowing that his son was facing divorce and prison.

Until they separated in November 2013—a separation precipitated by Mr. DeCrescenzo's return to gambling and his arrest—Mr. DeCrescenzo was married to a person he has described as his "best friend," Christina DeCrescenzo. They were married for six years and, before the divorce, had a "great relationship."  *See* PSR ¶37. They have two children, a five-year-old girl, T.D., and a young boy, L.D., who is now almost two years old.

Mr. DeCrescenzo has a solid relationship with his children.  He is a hands-on father, a role he takes seriously.  He has 50% custody of his children as a result of the divorce, which only became in January 2015.  How exactly the family will cope with finances and shared childcare issues if Mr. DeCrescenzo goes to prison remains uncertain.  It is something that weighs heavily on his mind, something mentioned in the PSR (PSR ¶46) and alluded to in his personal statement to the Court.[2]

The PSR and the character letters submitted to the Court confirm that Mr. DeCrescenzo is a selfless man who is committed to his children and the community. For more than ten years, he volunteered as a youth baseball league coach, and he is currently a volunteer dad with the West Haven Pop Warner Football and Cheerleading

---

[2] Mr. DeCrescenzo's personal statement has been provided to the U.S. Probation Office for transmittal to the Court.

Program.  The president of that organization, Michael Last, who also served with Mr.

DeCrescenzo on the West Haven City Council, writes of Mr. DeCrescenzo's volunteer

activities and his attendance at his daughter's sporting events.  While these may appear

to be small things in the eyes of some, watching a parent's enthusiasm for his children

leaves its mark.  In Mr. DeCrescenzo's case, it was not lost on Mr. Last:  "His family is

important and means the world to him—and it really shows."  Ltr. from Michael Last.

The former Mayor of West Haven, John Picard, writes of how Mr. DeCrescenzo

is a "well known, liked, and respected member of the West Haven community, having

served on the West Haven City Council, the West Haven Democratic Committee, and in

various coaching capacities."  Ltr. from John M. Picard.  When asked to describe Mr.

DeCresenzo, Mr. Picard writes:

> If I were asked to describe Steve in a word, I would probably choose self-
> less.  Steve is motivated by his ability to improve the lives of others
> through his engagement in their lives and through the network of friends
> and colleagues he has developed over the course of more than a decade
> in public service.  His commitment to people has always been without
> prejudice, spanning the youngest residents to the hundreds of seniors
> living in public housing.  Steve has and continues to be committed to filling
> the needs of people that are unable to help themselves.  This is without a
> doubt, his biggest strength.

*Id.*

Since his arrest, Mr. DeCrescenzo has done everything in his power to

rehabilitate himself and put his mistakes behind him.  He immediately entered

counseling to address his gambling addiction.  He has been in counseling for almost

seventeen months.  In addition, although the pending nature of the state charges made

it difficult to find work initially, he finally landed a job that allows him to meet his financial

obligations.  *See* PSR ¶49.  Although the income is commission-based, he is slowly

building a client base and earning more income.  If he is incarcerated, he will lose the job, which will have serious ramifications for his ability to support his children and pay back the restitution he now owes.

## B.    The Nature and Circumstances of the Offense

The PSR and stipulation attached to the plea agreement accurately describes the offense conduct.  Beginning in October 2012, Mr. DeCrescenzo began transferring funds from two different customer accounts and placing them into a third cusomter's account over which he had control as a personal banker.  He then withdraw cash from the accounts to pay gambling debts.  In February 2013, he put approximately $40,000 back into one of the accounts, using money he received from a personal injury settlement and other income.  In June and July 2013, he sustained heavy gambling losses of $94,000 and he could not replace the money in time.  On July 20, 2013, a customer noticed the suspicious transfers and the scheme was uncovered.  Although the customers were made whole by the bank, Chase Bank incurred a loss of $106,028.74.

## C.    Deterrence, Punishment, and Rehabilitation

Section 3553(a)(2) instructs the Court to craft a sentence that reflects the seriousness of the offense (just punishment) and promotes respect for the law (general and specific deterrence), while at the same time recognizing the value and likelihood of rehabilitation.

First, with regard to the seriousness of the offense, there is no question that the offense is serious.  Wire fraud is a class C felony punishable by up to 20 years imprisonment, and Mr. DeCrescenzo's advisory range calls for a sentence of 15-21

months imprisonment.  Further, the facts of the case show that Mr. DeCrescenzo breached the trust placed in him by his employer, and the total theft involved in excess of $100,000 in customer funds.

Mitigating this to some extent, however, is the fact that Mr. DeCrescenzo's ability to control his actions was diminished by his addiction to gambling.  Moreover, as even the Government acknowledges, Mr. DeCrescenzo sought to put some of the money back well before the crime was detected.  As noted above, he returned approximately $40,000—using his own funds—in February 2013, nearly five months before the crime was detected by law enforcement.  This decision by Mr. DeCrescenzo suggests that, while he had difficulty controlling his impulse to gamble, he knew that he needed to mitigate the harm caused by his actions.

With regard to deterrence, the impact of this prosecution on Mr. DeCrescenzo— both financially and emotionally—has been severe.   As a result of his actions, he has lost his marriage, his career, his position on the West Haven City Council, and his reputation in the community.  In his personal statement, he acknowledges the deterrent effect these consequences have had:

> I have a gambling problem and I relapsed but it is not likely that I will do this again because in the past I have never had everything taken from me. I lost my family, my job, my financial security and potentially my freedom. This entire ordeal has been devastating to me and I definitely hit rock bottom and I never want to go through this ever again.

In addition, Mr. DeCrescenzo has had to live the last 15 months—the bottom of the advisory range—on some form of pretrial release, whether in state or federal court. During this time, his travel has required permission from the U.S. Probation Office, he

has been required to report to the U.S. Probation Office regularly, and he has been required to refrain from gambling.

The fact that Mr. DeCrescenzo has undertaken efforts to obtain treatment and rebuild his life also speaks volumes to whether he is at risk of re-offending.  While a defendant suffering from an addiction or compulsion may be less culpable than the typical offender, that same defendant, without treatment, may present a greater risk of recidivism if the addiction is not addressed. Here, Mr. DeCrescenzo has taken those steps, suggesting that he will not be a danger to the community if he is sentenced to probation.

Because there is no need to deter Mr. DeCrescenzo, or incapacitate him to protect the public, a harsher sentence in this case would have to be justified on the grounds of general deterrence.  Research has shown, however, that a longer sentence for white collar offenders has little impact on the prospective behavior of others.[3]  To the extent general deterrence is possible, it comes not from the length of the sentence, but from the certainty of being caught and the shame and humiliation of a public prosecution.  In other words, shorter sentences can have the same deterrent impact as longer ones.  *See United States v. Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012) ("[C]ommon sense suggests that most business executives fear even a modest prison term to a degree that more hardened types might not. Thus, a relatively modest prison term . . . is 'sufficient, but not more than necessary' for (general deterrence) purposes.");

---

[3] Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).  "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

*United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("there is a considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders").

Probation sentences can also be just as effective as custodial sentences in deterring others.  Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Finally, a probationary sentence would facilitate the overarching goal of the sentencing process: rehabilitation.  In fact, the Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation . . . ." *Mistretta v. United States*, 488 U.S. 361, 367 (1989).  Here, Mr. DeCrescenzo has demonstrated that the roots of rehabilitation have already taken hold.  He is working, his gambling is under control, and he is amenable to supervision in the community.  In fact, based on his history of public service and community volunteerism, a probationary sentence with significant community service requirements in lieu of incarceration would be entirely appropriate. The use of community service as a criminal justice sanction is also a time-honored and responsible form of punishment.  Courts recognize that community service "…is a burdensome penalty that meets with widespread public approval, is inexpensive to administer… produces public value… and… can to a significant extent be scaled to the

seriousness of crimes."  *See* National Institute of Justice, *Intermediate Sanctions in Sentencing Guidelines* (May 1997).  Moreover, sentences involving community service allow courts to impose punishments that are proportional and offender-specific and they fill the void when courts feel that neither simple probation nor incarceration is appropriate for a particular defendant.  *See* Meyer, J., and Jesilow, P., *Judicial Attitudes Toward Community Service Sentences in The IARCA Journal on Community Corrections*, 10-12 (April 1993).

**D.     The Kinds of Sentences Available and the Need for Vocational Training, Drug Treatment, and Medical Care**

Because Mr. DeCrescenzo stands convicted of wire fraud, 18 U.S.C. §1343, which is a class C felony, *see* 18 U.S.C. §3559(a)(3), by statute he is eligible for a sentence of probation of between one and five years.  *See* 18 U.S.C. §3561(c)(1). Under the U.S. Sentencing Guidelines, however, he is ineligible for probation unless the Court imposes a sentence of less than 10 months. *See* U.S.S.G. §5B1.1, comment (n.2).  Thus, in order to impose a sentence of probation, the Court must downwardly depart or impose a non-Guidelines sentence.  *Cf. Gall v. United States*, 552 U.S. at 58-59 (although "Guidelines state that probation alone is not an appropriate sentence for comparable [mine run] offenses … the Guidelines are not mandatory, and thus the range of choice dictated by the facts of the case is significantly broadened") (citation and internal quotation marks omitted).

In selecting an appropriate sentence, Congress directed the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," and the "general

14

appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. § 994(j).  Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and nonserious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note).

Mr. DeCrescenzo is plainly not a "violent and serious offender" who "pose[s] the most dangerous threat to society."  Moreover, his need to continue counseling for his gambling addiction, his obligations to his family, and the need for restitution suggest that probation would be a more appropriate sentence.

**E.      The Need to Avoid Unwanted Sentencing Disparities**

Section 3553(a)(6) requires judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Some disparity may be appropriate, however, in order to avoid punishing offenders the same when their circumstances and motivations are different. *See United States v. Irey*, 612 F.3d 1160, 1205 (11th Cir. 2010). (en banc) ("[I]t is worth noting that equal treatment consists not only of treating like things alike, but also of treating unlike things differently according to their differences.").

Here, Mr. DeCrescenzo's motivation for engaging in the conduct was linked to an addiction, and he sought to ameliorate the effects of his conduct by replacing the money

he stole well before he knew there was likely to be an arrest.  In addition, his post-arrest rehabilitation and willingness to cooperate with authorities in untangling the details of what transpired goes beyond what other offenders have done when faced with similar charges.

**F.     The Need for Restitution**

In determining the appropriate sentence, this Court must consider "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. §3553(a)(7); *see also*, *e.g.*, *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (acknowledging district court's discretion to depart from guidelines to impose probationary sentence, since the "goal of obtaining restitution for the victims of Defendant's offense . . . is better served by a nonincarcerated and employed defendant"); *United States v. Peterson*, 363 F. Supp. 2d 1060, 1061-62 (E.D. Wis. 2005) (granting a variance so that defendant could work and pay restitution).  Here, allowing Mr. DeCrescenzo to continue working is in the interest of facilitating restitution.

**G.     Mitigating Factors and Non-Guideline Considerations**

> **1.     Mr. DeCrescenzo Did Not Steal To Enrich Himself, But Rather To Support A Gambling Habit**

"By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences." *United States v. Hendrickson,* No. CR 13–4110, 2014 WL 2600090, at *5 (N.D.Iowa June 11, 2014). While this statement was directed at drug addiction, gambling addiction is similar.  The American Psychiatric Association recently reclassified pathological gambling from an impulse control disorder to an addiction-

16

related disorder. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–V") 585 (5th ed.2003).

In this case, Mr. DeCrescenzo was not acting out of greed or mainstream criminal intent.  He acted compulsively as a result of a gambling relapse.  *See United States v. Milne*, 384 F. Supp. 2d 1309, 1310-11 (E.D. Wis. 2005) (granting variance where "defendant did not take the bank's money out of greed or a desire to live a lavish lifestyle, [but in effort] to keep a sinking business afloat").  Courts have recognized that compulsive gambling can contribute to diminished capacity and a loss of control, thereby warranting a lesser sentence. *See, e.g., United States v. Dikiara, No. 14-CR-119, 2014 WL 4960243, at *1* (E.D. Wis. Oct. 3, 2014)(district court imposed downward variance from 41-51 months to 15 months in case where defendant embezzled more than $1 million from employer over a decade to support compulsive gambling habit); *United States v. Liu*, 267 F. Supp. 2d 371, 372 (E.D.N.Y. 2003) (granting four-point downward departure under U.S.S.G. § 5K2.13 [diminished capacity] to reflect Liu's pathological gambling addiction).

## 2.    Aberrant Conduct/First-Offender Status

This case involves a first-time offender who led a law-abiding life for 36 years prior to committing a crime.  That particular status suggests that Mr. DeCrescenzo is highly unlikely to re-offend, he is amenable to supervision, and he is a strong candidate for probation.  *See United States v. Ward*, 814 F.Supp. 23, 24 (E.D. Va. 1993) ("the length of time a person refrains from the commission of crimes, which is invariably tied to a person's age, is a factor that is critical to a court's determination of the sentence it should impose."). Courts have also recognized that aberrant behavior, driven by

17

gambling, can merit a lesser sentence.  *See*, *e.g.*,  *United States v. Iaconetti*, 59 F.

Supp.2d 139, 144-46 (D.Mass. 1999) (finding aberrant behavior departure appropriate

where defendant had no prior criminal record and engaged in drug-smuggling only to

pay off gambling debts to loanshark).

### 3.      Many of the Goals of Sentencing Have Already Been Achieved

Mr.  DeCrescenzo has been punished severely by the very public and lengthy

nature of the prosecution, which has gone on for nearly fifteen months.  The weighty

costs of defense, the significant financial sanction involved, the loss of his job, and the

shame and public embarrassment endured by Mr. DeCrescenzo and his family,

demonstrate that many of the goals of sentencing have been achieved in this case by

the prosecution itself.  Under such circumstances, a downward departure or variance is

appropriate.  *See*, *e.g.*, *United States v. Redemann*, 295 F.Supp.2d 887, 894-896 (E.D.

Wis.2003) (downward departure warranted where purposes of sentencing, including

punishment, specific deterrence and general deterrence already partially achieved

through imposition on defendant of, *inter alia*, payment of substantial restitution, public

shame, and collateral damage to family).

### 4.      Post-Arrest Rehabilitation

The Second Circuit has recognized that a defendant's extraordinary efforts at

post-arrest rehabilitation can support a downward departure or lesser sentence in order

to facilitate the rehabilitation process.  *United States v. Williams*, 65 F.3d 301, 306 (2d

Cir.1995); *United States v. Maier*, 975 F.2d 944, 946 (2d Cir. 1992).   Although *Maier*

dealt with a defendant addicted to drugs, a defendant's ability to conquer any addiction

is worthy of the same consideration.

**5.     Combination of Factors**

Even if none of the aforementioned factors alone justifies a downward departure or downward variance, the Court should find that a combination of factors justifies a sentence of probation, or a probation and home confinement.    *See United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (recognizing that combination of factors can warrant departure).

## **Conclusion**

For all the foregoing reasons, Mr. DeCrescenzo respectfully requests that the Court impose a sentence below the minimum of the advisory guideline range; and further, that the Court consider imposing a non-incarceration sentence of probation, with stringent conditions, such as continued gambling addiction counseling and substantial community service.  To the extent the Court believes additional punishment is necessary based on the seriousness of the offense, the Court should impose a period of home confinement in lieu of imprisonment.  Whatever sentence is imposed, Mr. DeCrescenzo will be required to repay his former employer total restitution in the amount of $106,028.74.

Respectfully submitted,

*/s/ Robert M. Frost, Jr.*
Robert M. Frost, Jr. (ct 19771)

FROST BUSSERT, LLC
129 Church Street, Suite 226
New Haven, CT 06510
Tel:          (203) 495-9790
Fax:         (203) 495-9795
Email:       rmf@frostbussert.com

Attorney for Defendant Stephen DeCrescenzo

## CERTIFICATION

I hereby certify that on this date a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Courtesy copy via email to:

Mr. Avimael Aponte Jr.
U.S. Probation Officer
District of Connecticut
157 Church Street, 22nd Floor
New Haven, CT 06510

Dated at New Haven, Connecticut on this 6th day of February 2015.

/s/ Robert M. Frost, Jr.
Robert M. Frost, Jr.